In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-253 CV


____________________



IN RE TIG INSURANCE COMPANY






Original Proceeding






 OPINION 


 This dispute involves discovery requests submitted in an insurance coverage case
between Henry C. Beck Company (Beck) and TIG (formerly known as Transamerica
Insurance Company). Beck is a construction company, and is a defendant in several personal
injury suits in which it is alleged that Beck is liable for damages due to its exposing claimants
to asbestos between 1960 and 1990. Beck alleges that the suits claiming asbestos-related
injuries have been filed in Texas, and elsewhere. In this suit, Beck sued TIG and four other
insurance carriers that allegedly provided general liability coverage to Beck between 1960
and 1990. Beck alleged TIG provided commercial liability coverage from November 1, 1969
to November 1, 1972. Through its suit, Beck sought damages for breach of contract,
Insurance Code violations, and declaratory relief. 

 Beck served a request to produce on TIG pursuant to Tex. R. Civ. P. 192.3(b). 
Through its request, Beck requested documents from TIG for a twenty-six year period during
which some of the asbestos claimants that sued Beck might have been exposed to asbestos. 
Beck also requested documents that reflected TIG's position pertaining to construing policies
TIG had issued since TIG's inception in 1911. TIG timely filed objections to all of the
requests, including objections to most of the requests on the basis that they were overly
broad. 

 Relator TIG filed a petition for a writ of mandamus complaining of an order
overruling TIG's objections to Beck's 113 requests to produce and the trial court's award of
$10,000 in attorney's fees against TIG. At the hearing on objections, Judge Gary Sanderson
overruled all of TIG's objections, and ordered production to all of the 113 requests as
propounded, and without modification. Therefore, we apply the law to the requests as
propounded by Beck, and review the rulings of the trial court on TIG's objections to
determine whether the trial court followed and applied settled law regarding discovery. 

 On multiple occasions in the past sixteen years, the Texas Supreme Court has
addressed issues concerning overly broad discovery. The principles of those cases that we
apply to resolving this discovery dispute are: 

 (1) Requests to produce must specify the items to be produced or inspected
with reasonable particularity. Tex. R. Civ. P. 196.1(b); Loftin v. Martin, 776
S.W.2d 145, 148 (Tex. 1989)(orig. proceeding); 

 (2) Discovery may not be used as a fishing expedition. K Mart Corp. v.
Sanderson, 937 S.W.2d 429, 431 (Tex. 1996)(orig. proceeding); Dillard Dep't
Stores, Inc. v. Hall, 909 S.W.2d 491, 492 (Tex. 1995)(orig. proceeding);
Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 814 (Tex. 1995)(orig.
proceeding); 

 (3) Requests must be tailored to include only matters relevant to the case. In
re American Optical Corp., 988 S.W.2d 711, 713 (Tex. 1998)(orig.
proceeding); 

 (4) Discovery orders "requiring document production from an unreasonably
long period or from distant and unrelated locales" are impermissibly overbroad
and are subject to correction by mandamus. In re CSX Corp., 124 S.W.3d 149,
152 (Tex. 2003)(orig. proceeding); 

 (5) To discover insurance policies, the proponent of the discovery must show
that the policy is applicable to a potential judgment. In re Dana Corp., 138
S.W.3d 298, 301 (Tex. 2004)(orig. proceeding); and 

 (6) To determine whether information beyond the policy is discoverable in a
particular case, "courts must ascertain if the information is discoverable under
Rule 192.3(a)'s general scope-of-discovery test." Id. at 303; see also Tex. R.
Civ P. 192.3(a).

 All but a few of the discovery requests propounded by Beck suffer from one to four
inherent problems. First, the requests are not restricted to the policy years in which TIG
allegedly issued policies to Beck, and as a result many of the requests are overly broad on
their face under Texas discovery rules. Second, there was no evidence to demonstrate that
TIG might have liability under any of the policy years for which it was requested to produce
policies because there was no showing that individual asbestos claimants that filed suit
against Beck alleged they were exposed to asbestos during any of the three years that TIG
provided general liability coverage to Beck. Third, many of the documents or categories of
documents are insufficiently specific to put TIG on fair notice of the documents it was
ordered to produce. As a result of these three problems, a fourth problem arises with respect
to many of the requests because the trial court could not have engaged in the required Rule
192.3 scope-of-discovery analysis to determine whether the material requested by Beck was
reasonably calculated to lead to the discovery of admissible evidence. 

 We list the following requests to produce propounded by Beck to TIG as examples:

 Request for Production No. 1. Copies of each policy of insurance
issued by Defendant TIG to Beck from 1960 to 1986 including any changes,
renewals, or endorsements.


 Request for Production No. 6. All documents including but not
limited to indexes, billing records, account records, policy lists, customer lists,
insured lists and/or memorandums that in any way reference and/or provide
evidence of the existence of a policy of insurance issued by Defendant TIG to
Beck from 1960 to 1986. This includes CGL, workman's comp, primary and
excess policies of insurance.


 Request for Production No. 7. Copies of each policy providing
insurance coverage to Beck and issued by carriers other than Defendant TIG
from 1960 to 1986 including any changes, renewals, or endorsements.


 Request for Production No. 10. All manuals, written policies, written
guidelines, memorandums and/or written procedures of Defendant TIG written
prior to the date that you anticipated litigation with Beck.


 Request for Production No. 11. All manuals, written policies, written
guidelines, memorandums and/or written procedures of Defendant TIG that
address asbestos litigation and written prior to the date that you anticipated
litigation with Beck.


 Request for Production No. 20. All agreements that you have to split
the costs of defense of any asbestos litigation in Texas with other carriers
where such agreement was reached prior to a settlement of the asbestos claim
at issue.


 Request for Production No. 22. All agreements that you have to split
the costs of defense of Beck with other carriers in any asbestos litigation
outside of Texas.


 Request for Production No. 25. All communications and/or
correspondence between you and Beck regarding the Subject Policy or
Policies.


 Request for Production No. 27. All communications and/or
correspondence between you and any other party besides Beck or other
carriers regarding the Subject Policy or Policies.


 Request for Production No. 32. If Defendant TIG contends that it
does not owe any duty to defend Beck under the subject Policy or Policies, all
documents that Defendant TIG contends supports the contention or allegation
that Defendant TIG does not owe Beck a duty to defend in personal injury
asbestos claims and lawsuits asserted against Beck under the Subject Policy
or Policies. This Request seeks documents that are not claimed to be
privileged. If Defendant TIG is withholding documents as privileged, Beck
requests that Defendant TIG provide a privilege log. 


 Request for Production No. 39. All documents or correspondence
from insureds addressing a rejection of a reservation of rights letter issued by
Defendant TIG.


 Request for Production No. 45. Copies of all lawsuits in which
Defendant TIG is a party and which deal with insurance coverage under a
CGL primary insurance policy. 


 Request for Production No. 48. Copies of all agreements between
Defendant TIG and its insured in which the insured agrees to accept an
allocation of the costs of defense based on a "time on the risk" allocation in
connection with Texas asbestos litigation.


 Request for Production No. 56. Copies of any and all requests by a
Texas insured tendering an asbestos lawsuit to Defendant TIG and seeking a
defense. 


 Request for Production No. 71. Any settlement agreements to which
Defendant TIG is a party pertaining to coverage in connection with asbestos
litigation. 


 Request for Production No. 85. All reservation of rights letters sent
by Defendant TIG in asbestos personal injury cases from 1986 to the present.


 Request for Production No. 97. All reports, studies, memorandums
and similar documents that discuss, address and/or pertain to the average cost
for defending an asbestos claim in Texas.


 Request for Production No. 107. All correspondence with other
insurance companies including but not limited to other named Third Party
Defendant carriers regarding joint and several duty to defend in asbestos
litigation in Texas. 


 The breadth of these requests was further expanded by the definitions section of the
request. For example, the term "you" and "your" was defined to mean "Defendant TIG
and/or any agent, partner, employee and/or other representative of Defendant TIG and/or any
merged, consolidated, or acquired affiliate, predecessor and/or successor." "The Subject
Policy or Policies" was likewise broadly defined to include, among other things, "each and
every policy of insurance issued by this Defendant to Beck from 1960 to 1986." 

 Our selection of these requests is intended to demonstrate the nature of the requests
served by Beck. Relator TIG argues that discovery request numbers 1-29, 37-57, 59-99, and
102-109 are overly broad because they are not limited to the three year time period asserted
to be the period in which TIG issued policies to Beck. TIG asserts that the requests should
have been narrowed by the trial court to the type of insurance, a reasonable time period, the
relevant location, and to relevant materials that might be admissible as evidence. TIG argues
that Judge Sanderson's order requires it to produce every manual, every written guideline,
and every written procedure ever generated by TIG between 1911, the date TIG asserts is the
date it was founded, and the filing of Beck's suit in March 2004. TIG also argues that the
requests would require it to produce every policy of insurance issued by TIG to Beck
between 1960 and 1986, whether the policy was relevant to an asbestos claim, or not, and
whether or not the policies were related to the underlying asbestos claimants' suits.

 We agree the requests to which TIG lodged overly broad objections were facially
overly broad. In Dillard Department Stores, Inc. v. Hall, the Texas Supreme Court held that
a request for Dillard to perform a search for documents covering a five year time period and
twenty states was overly broad as a matter of law. 909 S.W.2d at 492. In Texaco, Inc. v.
Sanderson, 898 S.W.2d at 815, the Supreme Court held that a request for all safety and
toxicology documents written by Texaco's safety director during time periods when plaintiffs
did not work on the premises was likewise overly broad. In In re American Optical Corp.,
988 S.W.2d at 713, an asbestos case, a trial court ruling to turn over every document ever
produced relating to asbestos for a fifty year period was ruled impermissibly broad. 

 The Supreme Court, in In re CSX Corp., 124 S.W.3d at 153, held that an interrogatory
requiring that a company identify all safety employees who worked there for a thirty year
period was impermissibly broad. The Supreme Court stated, "A central consideration in
determining overbreadth is whether the request could have been more narrowly tailored to
avoid including tenuous information and still obtain the necessary, pertinent information." 
Id. As reflected by the Texas Supreme Court rulings on similarly broad requests, the requests
propounded by Beck would likewise be held impermissibly broad. Rather than invite the
Supreme Court to answer the issue yet again, we agree that these requests violated settled
discovery rules because they were overly broad.

 We next evaluate whether the requests could have been more narrowly tailored. The
requests could have been narrowed to the three year time period during which TIG insured
Beck. Although narrowing the requests to a three year period would not have eliminated the
requirement that Beck show that TIG's coverage was triggered by an asbestos claim that
overlapped TIG's coverage periods for Beck, a date restriction would have largely reduced
the problem with the overly broad nature of Beck's requests. 

 It is possible that the relevant dates might exceed, to a limited degree, the dates that
TIG issued policies. Nevertheless, the trial court has a duty to make an effort to impose
reasonable discovery limits. In re American Optical Corp., 988 S.W.2d at 713. To the
extent that some documents might be relevant beyond the years TIG issued policies, the time
limits placed on discovery must be narrowed so the products of such a search are reasonably
calculated to lead to admissible evidence. We find Beck's requests could have, and should
have been more narrowly tailored. 

 Finally, before a party is required to produce, and after determining the years relevant
to the case and controversy, a trial court is required to evaluate whether the documents
requested meet Tex. R. Civ. P. 192.3(a)'s scope-of-discovery test. In re Dana Corp., 138
S.W.3d at 301. 

 [O]ur rules require that a threshold showing of applicability
must be made before a party can be ordered to produce multiple
decades of insurance policies; only those insurance policies
'under which any person may be liable to satisfy part or all of a
judgment' are subject to discovery. Tex. R. Civ. P. 192.3(f); see
also In re CSX, 124 S.W.3d at 152.

Id.


 A scope-of-discovery analysis is not possible without first determining which policy
years were actually in issue. Beck did not show the trial court that all three years in which
TIG allegedly provided coverage were involved, or provide any evidence to show the time
periods at issue in this case. Beck likely could have made the necessary threshold showing
by providing pleadings in the underlying cases to demonstrate that the years alleged by the
asbestos claimants in the suits overlapped with the years TIG issued policies, or produced
other evidence to reflect the time periods involved in the underlying asbestos claims triggered
TIG's alleged coverage dates. However, a discovery request for insurance policies during
periods for which no asbestos claimants were asserting claims against Beck, or for policies
that did not arguably cover the claims, would be overly broad. 

 On this record, there was no evidence showing when the underlying asbestos
claimants asserted that Beck exposed them to asbestos. It is the discovery proponent's
burden to demonstrate that the requested documents fall within the scope-of-discovery of
Rule 192.3. See In re Dana Corp., 138 S.W.3d at 302 (holding that because plaintiff failed
to establish applicability of policies issued between 1930 and 1945, a discovery order
requiring the production of those policies was overly broad). 

 With respect to Requests for Production Numbers 32-36, Beck propounded requests
that essentially requested TIG to produce all documents supporting its contentions justifying
its position to deny Beck's claims. TIG objected to these requests on the basis that they were
"beyond the scope" of discovery and were "impermissible request[s] that TIG marshal its
evidence." However, TIG did not expressly state in its objections that these five requests
were "overly broad,""vague,"or "ambiguous." 

 The Supreme Court discussed a similar request to produce in Loftin v. Martin, 776
S.W.2d at 148, in which a party requested that a worker's compensation carrier produce all
documents that supported its allegations. In Loftin, the Supreme Court stated:

 Loftin has requested all evidence that supports Lumbermens'
allegations. The request does not identify any particular class or
type of documents but it is merely a request that Loftin be
allowed to generally peruse all evidence Lumbermens might
have. We hold that such request was vague, ambiguous, and
overbroad and that the trial court was within its sound discretion
in sustaining Lumbermens' objection. No one seeks to deny
Loftin's right to see evidence against him, but he must formulate
his request for production with a certain degree of specificity to
allow Lumbermens to comply.


Id. at 148. 


 Tex. R. Civ. P. 196.1(b) provides, "The request [to produce] must specify the items
to be produced or inspected, either by individual item or by category, and describe with
reasonable particularity each item and category." Beck's Requests to Produce Numbers 32-36 fail to sufficiently specify with reasonable particularity the documents to be produced. 
Because Beck's requests were not reasonably specific, the requests were improper because
they were beyond the scope of discovery of the rules. The problem created by a trial court's
order compelling production of documents in response to a vague request is that the
responding party is unlikely to know what documents are required to be produced. TIG's
objections to this group of requests on the basis that the requests were beyond the scope of
discovery requiring TIG to marshal its evidence was sufficient to place the court on notice
of the objectionable nature of these requests. We hold that the trial court erred in overruling
TIG's objections to these requests.

 The burden to propound discovery complying with the rules of discovery should be
on the party propounding the discovery, and not on the courts to redraft overly broad
discovery so that, as re-drawn by the court, the requests comply with the discovery rules. 
Additional problems are created by "battlefield surgery" when a court attempts to deal with
voluminous requests, many of which suffer from overbreadth. In re Sears, Roebuck and Co.,
123 S.W.3d 573, 578 (Tex. App. - Houston [14th Dist.] 2003, orig. proceeding). Although
we could remand Beck's requests to the trial court and request that the trial court attempt to
narrow the requests, where the discovery as drafted by a party involves over 100 requests,
many of which are clearly outside the bounds of proper discovery, we decline to transfer the
burden of drafting proper discovery from the party that drafted it in the first place and place
it on the courts. We believe the better practice under these circumstances is to direct the trial
court to enter the ruling that should have been entered at the hearing. See Tex. R. App. P.
52.8(c).

 We next address Request to Produce Numbers 30-31, 58, 100-101, and 110-113. TIG
did not object that these requests were overly broad, but asserted various other objections.

 In Request to Produce Number 30, Beck requested TIG's file regarding its decision
not to provide Beck a defense in the underlying asbestos suits. The request, as worded,
specifically excludes privileged documents, but did request a privilege log in the event that
privileged documents were withheld. TIG objected that the request was vague and
ambiguous, and subject to the objection, indicated that it would make the documents
available. We hold that the trial court acted within its discretion to order TIG to comply with
the request. 

 In Request to Produce Number 31, Beck requested that TIG produce all manuals,
written policies, written procedures, memorandums and/or written guidelines it reviewed in
determining whether or not to provide a defense to Beck in the underlying asbestos suits. 
The request, as worded, specifically excludes privileged documents, but did request a
privilege log in the event that privileged documents were withheld. TIG objected that the
request was vague and ambiguous, and subject to the objection, indicated that it would make
the documents available. We hold that the trial court acted within its discretion to order TIG
to comply with the request. 

 In Request to Produce Number 58, Beck requested that TIG produce all documents
identified and described in its answers to interrogatories. TIG filed no objection, and
indicated it would make any responsive documents available. We hold that the trial court
acted within its discretion to order TIG to comply with the request. 

 In Request to Produce Numbers 100 and 101, Beck requested all reports, studies,
memoranda, and similar documents that address or pertain to actual or projected costs of
defense for Beck in the pending or future asbestos litigation. TIG filed no objection, and
indicated it would make any responsive documents available. We hold that the trial court
acted within its discretion to order TIG to comply with the request. 

 In Request to Produce Number 110, Beck requested TIG produce all lists of
documents relating to or identifying Beck's insurance coverage, whether from TIG or others,
for asbestos claims prior to 1986. TIG objected to producing documents that were attorney
work product, but that subject to such privilege TIG stated it would produce documents, if
any were available, at a reasonable time and place. At the hearing, Beck failed to
demonstrate that it complied with Tex. R. Civ. P. 193.3(b), that provides, "After receiving
a response indicating that material or information has been withheld from production, the
party seeking discovery may serve a written request that the withholding party identify the
information and material withheld." Further, Tex. R. Civ. P. 193.2(f) provides:

 A party should not object to a request for written discovery on
the grounds that it calls for production of material or
information that is privileged but should instead comply with
Rule 193.3. A party who objects to production of privileged
material or information does not waive the privilege but must
comply with Rule 193.3 when the error is pointed out.


 Because Beck did not follow the procedure regarding obtaining information
potentially subject to the attorney work product privilege, the question of whether a work
product privilege existed as to Request to Produce Number 110 was not properly before the
trial court. In Walker v. Packer, 827 S.W.2d 833 (Tex. 1992)(orig. proceeding), with regard
to a claim of privilege, the Texas Supreme Court stated:

[A] party will not have an adequate remedy by appeal when the
appellate court would not be able to cure the trial court's
discovery error. This occurs when the trial court erroneously
orders the disclosure of privileged information which will
materially affect the rights of the aggrieved party, such as
documents covered by the attorney-client privilege. . . . As we
noted in Crane [v. Tunks, 160 Tex. 182, 190, 328 S.W.2d 434,
439 (1959)]: "After the [privileged documents] had been
inspected, examined and reproduced . . . a holding that the court
had erroneously issued the order would be of small comfort to
relators in protecting their papers."


Walker, 827 S.W.2d at 843 (citations omitted). 


 Additionally, the Motion to Compel and the notice of the hearing on the Motion to
Compel did not indicate that the attorney work product privilege assertions were to be the
subject of the Motion to Compel hearing. At the hearing, no party addressed the specific
subject of the attorney work product privilege, and the hearing focused on whether TIG was
responsible for the objections filed by its former counsel. 

 The rules of procedure contemplate that the parties will itemize the documents
claimed to be privileged, and then produce evidence regarding the documents claimed
privileged if, based on the documents withheld, the proponent of the discovery desires to
pursue an attempt to obtain the documents. See generally In re E.I. DuPont de Nemours &
Co., 136 S.W.3d 218 (Tex. 2004) (orig. proceeding)(demonstrating the procedure followed 
to itemize privileged documents). It is clear that the procedures outlined by the rules
regarding attorney work product privilege were not followed by the parties in this instance.

 Under the record presented here, the issue of attorney work product was not properly
before the trial court. The parties may choose to proceed pursuant to Rules 193.3 and 193.4
on Request to Produce Number 110 if they desire to do so. See In re Shipmon, 68 S.W.3d
815, 822 (Tex. App. - Amarillo, 2001, orig. proceeding). We hold that the trial court erred
in overruling the objection to Request to Produce Number 110. 

 In Request to Produce Number 111, Beck sought to require TIG to produce reports
and other tangible documents from any of its consulting experts, if such information has been
reviewed by a testifying expert. TIG objected that this request exceeded the parameters of
expert discovery under the rules of discovery. We do not agree that TIG was correct in this
regard, since information regarding consulting expert discovery is not governed exclusively
by Tex. R. Civ. P. 195.1. TIG made no objection pursuant to Tex. R. Civ. P 192.4(a) that
the discovery accomplished by Request to Produce Number 111 would unreasonably
duplicate information that would be disclosed regarding consulting experts under Tex. R.
Civ. P 194.2(f)(4)(A), requiring disclosure of all documents and reports provided to any
testifying expert. In the absence of any objection other than the one lodged by TIG here, we
hold that the trial court acted within its discretion to order TIG to comply with the request. 
 In Request to Produce Number 112, Beck requested TIG produce all photographs,
films, slides, videotapes or other visual reproductions related to the lawsuit. TIG objected
that the request invaded the attorney work product doctrine. For the same reasons discussed
with respect to Request to Produce Number 110, we hold that the question of whether a work
product privilege existed as to Request to Produce Number 112 was not properly before the
trial court, and the parties may choose to proceed, if they desire to do so, pursuant to Rules
193.3 and 193.4. 

 In Request to Produce Number 113, Beck asked TIG to produce all tangible evidence
that TIG intended to introduce at trial. TIG objected that the request invaded the attorney
work product doctrine and impermissibly required TIG to marshal its evidence. For the same
reasons discussed with respect to Request to Produce Numbers 32-36, we hold the request
fails to identify the documents with reasonable particularity to comply with Rule 196.1(b). 
We hold that the trial court erred in overruling TIG's objection under the circumstances
presented on this record.

 In order to show entitlement to mandamus relief, TIG must show that it has no
adequate appellate remedy. Having to produce overbroad discovery that is almost unlimited
in time, to produce in response to vague requests that are not reasonably specific, or to
produce attorney work product as a consequence of a hearing where the attorney work
product privilege was not properly before the court would result in time, labor, and money
spent on improper production that could not be retrieved. To the extent attorney work
product is produced, the information learned by the other party cannot, as a practical matter,
be extracted even if the documents are subsequently retrieved. We hold that there is no
adequate remedy by appeal from the trial court's order that would require TIG to produce
overbroad discovery not sufficiently limited in time, to produce in response to an overly
vague request and to produce attorney work product. See In re CSX Corp., 124 S.W.3d at
153; Crane v. Tunks, 160 Tex. 182, 190, 328 S.W.2d 434, 439 (1959). 

 Finally, TIG complains that the trial court abused its discretion in ordering that TIG
pay $10,000 in attorney's fees within ten days of the signing of the order on the motion to
compel. TIG requests that we vacate the award, or that we abate the award until the entry
of a final judgment. The argument centers on the fact that its former trial attorney failed to
get express approval from TIG to file objections, and therefore, TIG argues, discovery
sanctions should not be imposed upon TIG for any problems that might have been created
by its former trial counsel's responses to discovery filed on its behalf. 

 The $10,000 sanction award, made payable within ten days, would generally not be
reviewed on mandamus because TIG has an adequate remedy by appeal. Tex. R. Civ. P.
215.3 provides, in pertinent part, "Such order of sanction shall be subject to review on appeal
from the final judgment." See also Braden v. Downey, 811 S.W.2d 922, 929 (Tex.
1991)(orig. proceeding) (mandamus is proper for review of a sanction only when it
terminates or inhibits the presentation of the merits of a party's claims). However, where
sanctions are imposed, the trial court should delay the payment of sanctions until the
termination of the lawsuit, or make a written finding that the payment of sanctions would not
obstruct the ability of the party being sanctioned to defend the suit. Braden, 811 S.W.2d at
929 (citations omitted); In re Lavernia Nursing Facility, Inc., 12 S.W.3d 566, 572 (Tex.
App.-- San Antonio 1999, orig proceeding)($10,000 sanction payable prior to conclusions
remanded for necessary finding that sanction would not preclude defendant's ability to
defend case). No written findings regarding the fact that the award would not obstruct TIG's
ability to defend were made by the trial court, nor can we determine whether the sanctioned
conduct was related to the rulings of the trial court that we have sustained. 

 Since the trial court did not make the requisite finding, we remand the issue involving
the sanction award to the trial court to give it an opportunity to modify its order in
accordance with Braden. The trial court is not prohibited from revisiting the issue of whether
discovery sanctions are justified with the benefit of the hindsight of this proceeding.

 In summary, we hold that discovery request numbers 1-29, 32-57, 59-99, 102-109, and
113 were overly broad because they are not appropriately limited in time and subject matter,
or did not put the defendant on notice of the document to be produced with reasonable
specificity, or were not shown to be within the scope-of-discovery as it relates to the case and
controversy. Accordingly, we conditionally grant mandamus relief, and direct the trial judge
to vacate his June 3, 2005 order pertaining to Requests to Produce Numbers 1-29, 32-57, 59-99, 102-109 and 113, and enter an order sustaining TIG's objections to these requests. Our
ruling does not prohibit Beck from propounding requests for production properly tailored to
the case, should it choose to do so. 

 We further hold that with respect to discovery request numbers 110 and 112, the issue
of whether privileged work product documents were requested was not before the trial court
under the circumstances of this record. Accordingly, we conditionally grant mandamus
relief, and direct the trial judge to vacate his June 3, 2005 order pertaining to request numbers
110 and 112. The parties may choose to proceed regarding these requests pursuant to Tex.
R. Civ. P. 193.3 and 193.4. 

 We further hold the trial court did not abuse its discretion when it ordered the
production of documents in response to discover request numbers 30-31, 58, 100-101, and
111. We deny the petition for writ of mandamus with respect to this portion of the trial
court's order.

 Finally, we decline to vacate the trial court's order granting $10,000 in attorney's fees
to Beck at this time, but remand the sanctions award to the trial court to review our rulings
in this opinion. However, in any event, the trial court should have delayed the payment of
sanctions until the termination of the lawsuit, or made a written finding that the payment of
sanctions would not obstruct TIG's ability to defend the lawsuit. We conditionally grant the
petition in part to allow the trial court to modify its order within twenty days of the date of
this opinion. 

 With respect to the relief granted herein, the writ will issue only if the trial court fails
to act promptly in accord with this opinion.

 WRIT DENIED IN PART; CONDITIONALLY GRANTED IN PART.

 PER CURIAM

Submitted on June 27, 2005

Opinion Delivered August 11, 2005

Before Gaultney, Kreger and Horton, JJ.